Good morning, Janet Mahoney on behalf of the people of the state of Illinois. Okay, good morning. You know, we had sent an order an hour earlier trying to structure the oral, and I understand that the parties came up with a different agreement, and that agreement was that the appellants would have 20 minutes initially to make their presentation, then a 30-minute rebuttal, up to 30-minute rebuttal, and then a 10-minute reply. Is that the agreement? I just did not object to their proposing a different agreement. In terms of the specifics of what they came up with, that was their suggestion, which is that I did not have an objection to whatever they suggested. Okay, you do have adequate time to make your... Yes. Okay, all right. With that, we'll proceed. I assume you agreed on who's proceeding first? Okay, you may proceed. Good morning, Your Honors. I'm going to take the first half of our initial portion to discuss the issue regarding compulsory joiner and speedy trial, and my colleague, Ms. Weck, will take the second half of our time to talk about the issues dealing with the jury instructions. But we're both happy to answer questions regarding any of the issues. The question before this court is the meaning of the phrase, within the jurisdiction of a single court, as it is written in the compulsory joiner statute. Specifically, the statute reads, if the several offenses are known to the proper prosecuting officer at the time commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution. The primary goal of statutory construction is to ascertain and give effect to the legislature's intent, and the plain language of the statute is the best indicator of that. But there's concurrent jurisdiction between the state court in Indiana and the Illinois court, but that's not under a single court, is it? Well, it all depends on how you interpret single court. Our interpretation of single court is the same court. There is a court, the same court, that can prosecute all the charges. In this case, the Cook County Circuit Court had jurisdiction over all of the charges, that being the same court. But the language in the statute doesn't say same. It doesn't, but the committee comments specifically equate same court with single court, thus presenting the issue that it is the same court. And the committee comments specifically say the issue then to be determined is whether the prosecution, knowing the several offenses exist, all which may be tried in the same court. They say same court, meaning there is a court, the same court, that can prosecute all the charges. And the may leads to a less rigid standard than what the state suggests, which is that it's to the exclusion of all other courts. May be prosecuted in the same court means there is a court that may prosecute all these charges, and in this case there was a court, and that was the Cook County Circuit Court. Moreover, the state's interpretation would lead to an absurd result. Every single case that had dual jurisdiction, whether it be with another state or the federal government, compulsory joinder would not apply. All of the cases, all in Illinois, gun cases, drug cases, of which there are so many that the federal court also has jurisdiction, in all of those cases, compulsory joinder would not apply. That cannot have been the intent of the legislature to let all of those cases fall into this loophole simply because there is another jurisdiction that also could prosecute these cases. Such an interpretation also would thwart the whole purpose behind the statute, which was to disallow these piecemeal prosecutions. So in this case, if you found that compulsory joinder did not apply, then it would have been possible for the state to charge McGee and Moody with aggravated battery, aggravated kidnapping, the original charges that they filed, prosecute on those charges, maybe not get the result they wanted, and then go back and charge them with attempt to murder. That does not serve the purpose of the compulsory joinder statute. Moreover, as what happened in this case, they were subject to trial by ambush, which is what the Illinois Supreme Court in Williams specifically said should not be the case. In Williams, the defendant was originally charged with contributing to the delinquency of a minor in regard to the decedent's death and then subsequently, 168 days later, charged with the murder. The Illinois Supreme Court reversed the murder convictions under the compulsory joinder speedy trial issue. And the same concerns are present here, where the state was allowed to lull Moody and McGee into acquiescing to pre-trial delays on the pending charges while it prepared for trial on the more serious, not yet pending charges. The state waited over a year and a half to charge them with murder, a much more significant charge than what they were originally charged with, and ended up initially seeking the death penalty. All the while they were preparing for this and Moody and McGee had no idea. And then they were faced with a difficult decision. It was on the eve of Moody's trial. They were set for trial and these new charges were filed. He then had to decide, do I go forward with these new charges or do I now take another year and a half preparing for charges that were not brought when they should have been brought? The committee comments also discuss, when discussing this precise language in the statute, say, Second, the several charges must be within the jurisdiction of the same court. Unnecessary recognition of the statutory venue provision. Now this is an interesting comment in these committee notes and it seems that the legislature intended that the jurisdiction requirement to mean only that the several offenses should be joined when venue is proper for all the offenses. The statute was written prior to the 1970 constitution, which established a single unified court in the state of Illinois, the circuit court. Prior to that, there were probate courts, city and municipal courts, other various county courts, and it's possible that the legislature meant that jurisdiction was in regard to those limited jurisdictional courts within the state of Illinois. It wouldn't make sense that the legislature would carve out an exception for dual jurisdictional issues in an Illinois compulsory joinder statute that would thwart the purpose of the entire statute and it would lead to these absurd results as I've mentioned. And moreover, to the extent that this court does find the phrase ambiguous, the rule of lenity does require that they should be resolved in favor of the defendants. Just briefly, I'd like to discuss that for the first time on appeal to this court, the state has argued that there's a second issue in regard to the compulsory joinder claim, and that is that there was no additional information that was presented and that was the reason for the delay in charging the murder charges. This argument is disingenuous, it has been lied by the record, and it has been affirmatively waived below. In the response to the defense motion to dismiss the charges, the state said that there was one of the conditions of compulsory joinder that had not been met within the jurisdiction of a single court, never mentioning new or additional information. At the hearing on McGee's motion, the trial court affirmatively stated on the record that it was his understanding that all the information was known to the proper prosecuting officer at the time that the original charges were filed, and the state remained silent. The state conceded this point below. It is disingenuous to now argue that there was new information, and in fact the record establishes that there was no new information. The coroner's report that was dated May 16, 2007 found the cause of death to be both blunt force trauma and extensive burning. At trial, the coroner did not change his opinion. He said that he had never changed his opinion. His opinion from the beginning until his trial testimony was that the cause of death was blunt force trauma and extensive burning. In his testimony, he did say that it was possible that Bridges was dead before the fire was set, and it was also possible that Bridges was not dead before the fire was set. No new information was ever revealed. The place where the state is coming up with this new information is on cross-examination of the medical examiner. Mr. Moody's attorney asked, didn't my colleague and I come and speak with you, and didn't you tell us that blunt force trauma was the cause of death? The medical examiner basically said, no, that's not what I told you. I've never changed my opinion that the cause of death was blunt force trauma and excessive burning. And from this little attempt at impeachment in the cross-examination, the state now alleges that there's this new information that just simply is not there. And to make this point even clearer, the conversation between defense counsels and the medical examiner took place in August or September of 2009, and the state came before the trial court in July of 2009 to say that they were going to file new charges. So clearly, this new information that actually doesn't even exist was not the basis for the new trial, the new charges. If you have no other questions. All right, let's move on to the next part. May it please the court, again, Kathleen Weck representing Mr. McGee. And I'd like to focus mainly on the jury instruction issues, but we'll be happy to answer questions on anything else you might have to want to ask. I want to first point out that if this court grants relief on the issue that my colleague just addressed, then there would be no need to address the jury instruction issues because they only apply to the murder conviction. Nonetheless, the issue here, the main issue, is that concerning this non-IPI jury instruction that the defendants requested but the judge rejected,  the first is that in an Illinois homicide case, when a body is found outside of the state, there is no presumption that the death or the acts causing the death occurred in Illinois. And the second principle is that jurisdiction in a murder case is an essential element that must be proved beyond a reasonable doubt, along with the other elements of the offense, at least when the body is not found in Illinois. And this principle was articulated by the Illinois Supreme Court in the case of People v. Holt. With these principles in mind, in a case like this one where the decedent was found in Indiana, the state bore the burden of proving beyond a reasonable doubt that the death or the acts causing the death occurred wholly or partly in Illinois. Contrary to the state's position in its brief, the issue of whether the crime occurred even partly in Illinois is a question of facts for the jury to decide. The jury was never told this important instruction. The judge's refusal to give this instruction was error for two reasons. First, the jury was not supplied with the correct legal principles. And the defendants also, second, were denied their due process right to have the jury instructed on their theory of defense. First of all, the key point is that when there is a legitimate factual dispute, this instruction is necessary. And here, the jury was not provided with the principles about state criminal jurisdiction and that it must find beyond a reasonable doubt that the conduct causing the death occurred at least partly within the state. There is a factual dispute. This was, as Mr. Thedford, who was representing Mr. McGee, pointed out, the state has not proven to you that enough facts were caused in the state of Illinois to justify you finding, bringing guilty verdicts. But in this case, the issue wasn't whether or not this victim was beaten in Illinois, because clearly there was blood evidence and other evidence collected in the basement. Was the issue about who did it rather than whether this beating took place in Illinois? It wasn't really the defense, Your Honor, that some other person may have killed Bridges in Indiana. There was one of the theories of defense was that it was a misidentification that Leonardo Johnson was lying, that Leslie Reeves and Moriah Price were confused about who the defendants were. But there also was another defense theory that not enough injuries that resulted in the death occurred in the state. And this was a legitimate factual dispute, and it was the defense's theory of defense, another one, as Thedford pointed out in closing, that the jury should have considered. But they were not given the tools, even instructed on that, as an important element they could find. In fact, the state, it kind of leads to the second issue, the causation instruction that the state requested and was given over defendants' objections in which they said they were told that it was not necessary that they find that the defendants were wholly responsible for the death. If there was an intervening cause, those had to be a contributing factor. And causation was not an issue with this case, as was discussed in the briefs, because that's more typically done in a medical case. This was not an intervening cause case. This was whether or not the defendants were responsible for the acts causing the death or the death, and whether or not the acts of the murder were committed in Illinois, because Illinois only has jurisdiction over crimes that are committed within its borders. So this is an important defense theory, and it's an important instruction that the jury should have been given. Is there a theory of instruction with regard to the felony murder conviction? Our position is that it would be, because still there's an aggravated kidnapping evidence in Illinois, but still the actual felony murder, the death, needs to be proven to have been caused within the state also. It wouldn't be enough within the other state. This was in Holt. The case was a felony murder case where it was an aggravated kidnapping was the predicate felony issue, and Holt said the aggravated kidnapping on its own with the death occurring and the acts resulting in the death occurring in another state, that that was not enough to find that Illinois had jurisdiction over a felony murder. So it's our position that probably perhaps more goes to the intentional unknowing counts, but it also does go to the felony murder count also. So we cannot say that this was like a due process violation under the Fifth Amendment. His right to have the jury instructed on his theory of defense and implicates his right to a fair trial, the jury properly instructed. So with this being a preserved constitutional error, the question is whether this could have been harmless beyond a reasonable doubt, and our position is that it's not, and we ask your honors to vacate the murder convictions for these reasons and remand for a new trial. Thank you. Ms. Mahoney. Good morning. Again, Janet Mahoney on behalf of the people of the state of Illinois. Convulsory joiner would be required if the offenses were within the jurisdiction of a single court. Emphasis is on jurisdiction, and it's important to understand the play between jurisdiction and venue when reviewing the statute. Jurisdiction is the power of the state of Illinois to hear the case. Venue is where in the state is that case going to be heard. There's a very important distinction between the two. Venue can be waived. Venue had an IPI when it did exist. It no longer is an issue in the state of Illinois. And it can, versus jurisdiction, which if you don't get it right, it is void. There is no IPI on it. So this compulsory joiner statute is addressing whether the state of Illinois had the power to hear this case. Was the jurisdiction the power in one state? And in this case, it's obvious the power wasn't in one state because the body was in Indiana. Why would we allow this phrase to be in the statute? Because there needs to be some discretion and some investigation when you have a body that's found in one state and acts that were committed in another state. The defense says that our interpretation of this phrase is absurd, but quite honestly, the defense interpretation leads to a more absurd result because under their interpretation, then, defendant is going to be charged with murder in Illinois and Indiana simultaneously until they can figure out which state should take the case. So now he's in jeopardy in two states at the very same time. This statute allows when jurisdiction is not in a single court for some discretion to be handled in the case. And that is what you have in here. But isn't it true that if this victim was beaten in Illinois and driven across the border to Indiana where he dies, isn't it true that he could still be prosecuted in Illinois under the law? Because part of the offense occurred in Illinois. Which became clearer upon speaking to the medical examiner because his initial report listed the cause of death. He also attributed it to the fire. And at that point, that's what needed to be investigated. Was it the fire? Was it the beating? Was there additional beating in Indiana? And as the facts became clearer... Wasn't the beating a contributing factor to the death? The beating began in Illinois and... Was there a beating in Indiana? And that was the defense theory at that point was that there was some additional act that caused the death. The fatal blow was in Indiana.  It's not in Illinois. And the state's evidence showed that it was a beating, a vicious beating that began in Illinois that inflicted injuries... When you say it began in Illinois, that suggests to me that there was also a beating in Indiana. There could have been. Was there evidence that there was a beating in Indiana? There is nothing that we showed other than the inference, of course, that the body was found in Indiana. But didn't the medical examiner's report indicate that there was any beating in Indiana? He doesn't report that there's any beating anywhere. The medical examiner doesn't attribute the beating to any one particular place. So given the fact that that is not apparent on the face of his report... Jurisdiction could be in both places because, again, the bodies in Indiana... Presumptive jurisdiction is there. The state has to have the opportunity to exercise their discretion without the worry of the compulsory joinder statute barring their prosecution. Otherwise, they're going to charge the defendant right away, and Indiana can charge the defendant right away. And now he's facing... Counselor, you could have charged felony murder right away, couldn't you? The state has the opportunity to investigate what could be the most serious type of murder, intentional murder. And in this case, they should be given that opportunity. But the question was, you could have charged... Couldn't you have charged them with felony murder in 2007? Again, if the blows... You could have charged him with attempt murder, which we charged one of the defendants with that at the time. But again, if the blows... It is not clear on the medical examiner's report that the blows were attributed to that beating. I'm talking about felony murder. I understand that. The kidnapping, probably the aggravated kidnapping, clearly you had evidence that that took place in Illinois. Right. Okay, so can't you charge felony murder even if the death ultimately occurs in Indiana? Actually, under Holt, they would... The Illinois Supreme Court would state, no, because you need to attribute some of the acts to the death that caused the death to Illinois. So in Holt, it was an aggravated kidnapping and then the rape, murder that all occurred in the state of Wisconsin. Here, we do have a vicious beating. But perhaps there was a more vicious beating at the time during this case. Your termination of vicious beating kind of underestimates what was taking place here. You had a gentleman swinging a two-by-four with teeth flying through the air. Those are potentially lethal blows being delivered. And you had evidence that those potentially lethal blows were being delivered here in Illinois. Correct. And I could perhaps agree with you, in July of 2007, before they knew who the victim was, it's going to be presumptively Indiana. But once you link this up, you have a witness who says, I saw this tooth-shattering beating with a two-by-four taking place in Illinois. And the coroner saying he was beaten to death does not give rise to jurisdiction here. Correct. And it's that they need to know, not that they suspect, but they know that the acts that occurred in Illinois. And knowledge is the conscious awareness and certitude concerning those relevant facts. So, yes, they really did have a really good reason to suspect that those facts were the cause of the murder. But at that point, that was just a suspicion. It is not until they know that the compulsory joinder is triggered, knowledge. Not that they should have known, but that they knew. And it wasn't until speaking to that medical examiner where additional facts came out where he said, no, it was not the fire that caused the death, that it became clear that murder was committed partly in Illinois. And that's when they changed the charges. Now, counsel speaks about, is that the new information about which? They go hand in hand, actually, this knowledge concept and within a single jurisdiction. But this is a review of a pretrial ruling, and it can be affirmed on any ground in the record, whether there is no waiver of a ground that you can affirm a pretrial ruling on. So how developed is the record on this conversation, this subsequent conversation that took place with the medical examiner? It was talked about at trial. It was talked about at trial. And he said at trial, I think it was on cross. I didn't, I never wavered on this. I've never changed my position on this. I've never, am I correct? He did not make it sound as if he was imparting new information, or he had imparted new information. When he spoke to the defense attorneys in 2009, he told them that the fire was not the cause of death. Now, granted, by the time trial came around, he actually was going back and forth. There's no carbon monoxide in the system, therefore, he had to be dead before the fire started. But there was some fluid in the lungs, so maybe it's possible that he was alive. But in 2009, according to this cross-examination, when he spoke to those defense attorneys, the victim was dead when the fire started. And that is what has to be, obviously, is the reason for the change in the charges. The state changed the charges in July 2009. Defendant was arraigned in August of 2009. And the first person, it appears, that they talked to after those changing charges was the medical examiner. He is the new fact. The fire did not cause this death. I mean, one of the things that occurs to me is the medical examiner is an agent of the government, just like the prosecutors and the police are. So you've got the government just not speaking very clearly with other agents of the government. And as a result of that, I mean, one could look at this and say, the medical examiner did say, I believe, you know, I never really changed my diagnosis. Maybe I didn't write it so artfully, but I never really changed my diagnosis. And so it's possible that there was just not good communication between the medical examiner and the prosecutors in the different states. And should that lay on the defendant to have to bear the brunt of that? I mean, it would be one thing if new evidence was uncovered, right? A body was discovered and it flipped the whole case on its head. And the state said, well, now we know something. We didn't. But they had access to this medical examiner all along. They had his reports all along. And two years passed. And then suddenly a subsequent conversation comes up where maybe they realize we hadn't been really understanding each other the first time. So now let's go ahead and charge him with murder two years later. And meanwhile, the defendant's speedy trial rights are kind of lost in the wind. I mean, do you see the point I'm making? I see the point you're making, and there are two answers to that question. Number one is that this is a pathologist in Gary, Indiana. There's no indication whether he actually is an appointed official of the government. So to term him as a government actor, I'm not really clear if that's true in this case. Again, a pathologist in Gary, Indiana. It's not an elected official. It's not an appointed official. The second thing is that you are imputing a should-have-known concept onto what the prosecutor did here. Should-have-known is a civil concept. It doesn't apply to this criminal statute. And it's the knowledge, not whether he should have known. And when he knew, he charged it. He had learned from the medical examiner in 2009 about this change in position and then sat on it for additional time because in 2009 he knew the fire didn't cause it. So if he waited until 2010, absolutely you're right. But to say that he should have known, that's a civil concept, not a criminal concept. It does not apply to the statute. So I'm clear that your position is that concurrent jurisdiction by two states defeats the compulsory joinder. It gives them the opportunity to their discretion to investigate and figure out really where should this be. If the state had not, these defendants were getting charged with murder. It just was a question of where. There is no surprise here. There is a dead body. It's just a matter of who was going to charge it. And that's what was figured out during this time period. And it was Illinois. The alternative could have been attempt murder in Illinois, murder in Indiana. Here let's kind of go to the defendant's argument that so you charge attempt murder here. You charge aggravated battery, aggravated kidnapping here. You don't prevail there. And then subsequently you decide, well, now let's charge first degree. Well, they're two different crimes. Attempt murder and murder would be two different crimes. But doesn't that, though, leave us with this piecemeal prosecution issue that is problematic? No, this is going to put the defendant in a position of having to answer to two different states at two different courts at the same time. Because both states are going to charge him with murder. If you rule out that they are required to join this at the outset, Illinois is charging him with murder and Indiana is charging him with murder, and then they'll figure out who has jurisdiction as opposed to let's figure it out and one of us will charge you. Is that what happened? That's assuming that the other state has the same compulsory joinder statute that's been interpreted. Correct. But for Illinois, they're going to charge you right at the outset whether they know if they have jurisdiction. Why wasn't that done here? It didn't happen, though. Because they did not know that they had. They suspected, but suspicion is not enough. It must be knowledge. Well, it must be knowledge under the statute, but that doesn't necessarily inform the state's position with respect to whether to charge. The state could have charged and later the charge could have been dropped once you figured out who had jurisdiction to proceed. So that would prejudice the defendant. So now he's been charged for no reason. He's been subject to a prosecution that the state didn't have a good faith basis in bringing just because they needed to make sure that they covered this instead of taking their time investigating and working with the other agencies to determine who has the jurisdiction. The much fairer approach to the defendant. This wasn't a case where they were trying to, where there were multiple acts, multiple murders committed at the same time and they do one murder trial, they didn't get a result they wanted with the sentence, did another murder, did another murder. This one, only one state tried him for murder. So in 2007, you knew that there was a murder. You knew that there was a beating in Illinois and you knew that the medical examiner was willing to say at least one of the causes of death was the beating, right? He listed several causes, but did not. But all of them were the beating except for the last one, the charred body. The charred, the burning, the burning. The burning. But all the other ones, the craniofacial, all the thoracic, all those things, that was all talking about the beating part. Correct, correct. But again, also. Could you have prosecuted that case? That, again, would have to be, you'd have to talk to that medical examiner to attribute those injuries to the beating in Illinois. It was a very short time, so that was to our advantage. But the defendant's position at trial was this idea that those blows that killed him, they didn't happen here in Illinois. So that bolsters the position of the state. But you could have, in good faith, prosecuted him for murder based on that initial coroner's report, couldn't you have? You could have taken to trial and you could have said the beating in Illinois was the cause of his death. And the defense would have probably made an argument like they did here, no, no, the real action was in another state. But you could have brought that case, couldn't you? Based on everything we know right now, as the facts came out of trial, absolutely. But at the time. Is that what I'm saying? I'm talking about. He suspected those injuries caused the death. He suspected, absolutely suspected that they caused the death. But clearly wasn't certain because they didn't charge him with the murder at the outset. They suspected but did not know. And once they knew, they did charge him. Everybody knew there was a dead body all along. Everybody knew that there was a vicious beating in Illinois and there was evidence in that basement of the beating having occurred there. Suspected but did not know. So in good faith, can you just kind of bring it and bring those charges? Because we think we can. It has to be a certitude, knowledge, a certitude that those facts. And that comes from Luciano. Conscious awareness, and actually I believe it might be in the definition of knowledge in our statute also. Conscious awareness and certitude concerning relevant facts. Confidence he can secure defendant's conviction. Were they confident they could secure defendant's conviction at the outset on the murder? Obviously not. Because they didn't charge him. Conscious awareness of evidence that is sufficient to give the state a reasonable chance to secure a conviction. You don't think you had that in 2007 with that coroner's report? That listed all of these things that led to death. All of which but one was the beating in Illinois. And then the coroner could have gotten on the stand and said those were really bad injuries. Sure. Some people survived really bad beatings. But that fire, nobody was going to survive that. But counsel, I mean, you don't bring every case when it's, you don't wait until you have every case completely 100% locked down that you have an absolute certainty you're going to win before you bring charges. I mean, that's not what you guys do. I mean, you can't do that. There are some cases that are harder to prove. I mean, you're making it sound as if you have to have ontological certitude of how this happened before you could bring the charges. That strikes me as a little higher standard than you normally hold yourselves to. And I'm not being critical. You can't hold yourselves to that normally. Well, and in this case, though, what changes this case is the fact that the body is found in Indiana. And it really, really makes it difficult. If the body was found on the Illinois State side of the line, he's getting charged with murder. But since it's in Indiana, it takes a little bit longer to figure these things out. That's why they have the phrase in there, within the jurisdiction of a single court. The defense made reference to some committee comments which attempt to clarify the language in the compulsory joinder statute, usage of the term same as opposed to single. And I ask, well, why wouldn't the legislature simply have used the word same? Can you respond to that? You actually said it exactly right. They used the word single court for a reason, because they're talking about jurisdiction in this statute. They're talking about venue in the committee comments, which is a completely different concept. Jurisdiction, power of the state of Illinois to hear that case, a single state. Venue, where within the state can that be heard? So the committee comments actually, I don't think, provide any guidance here whatsoever, because they're speaking of venue when their statute is clearly speaking of jurisdiction. With regard to the jury instruction on jurisdiction and whether a non-IPI on jurisdiction should have been submitted to the jury, it's the state's position that it's a factually based legal determination that needs to be made by the court at the outset. If the court doesn't have the power to hear the case, then it should never be submitted to the jury to begin with. And if the determination about jurisdiction is wrong, that determination voids the case. There's no other fact that we submit to the jury that can make the conviction void. And that is why we have the trial judge consider it. And in this case, the trial judge did the proper thing and refused to give that non-IPI instruction to the jury. There's noting that the cases, again, cited within this argument for the defense are venue cases. And venue, again, is not jurisdiction. Venue can be waived. Jurisdiction cannot. Unless there are any other questions, the people request that you affirm the conviction and sentences on both defendants. Thank you. May it please the court, I would just like to point out that the state's position that this was a factually based legal question for the court to determine and not go to the jury is not supported by any case law in the state. In fact, the cases such as Alexander, Gilliam, and Holt also are all talking about how this is a factual question that a jury instruction can be given. In fact, the state's position is that a jury instruction is appropriate when there is a legitimate factual dispute about whether the acts that resulted in the death occurred in this state or not. So respectfully, we ask, again, for the reasons stated in our briefs for relief to be given. Thank you. First, I just want to point out that the state now is bringing up two elements from the compulsory joinder that were not discussed below. My position is that these arguments have been waived. I understand that you're not bound to that, that Mr. Moody and Mr. McGee did not have an opportunity to respond to these arguments below, that knowledge was not, the knowledge and the new information, these were not litigated below. And frankly, it's unfair that they have not had the opportunity to respond to those. Secondly, this new information, I just want the record to be clear. The charges were brought before the alleged conversation between defense counsel and the medical examiner, or at least the state informed the trial court we will be reindicting on new charges. And then this alleged conversation between defense counsel and the medical examiner took place, and we really don't know what happened during that conversation. The state also has provided no evidence that defense counsels then went to the state and told them what the medical examiner said. The state is taking all of this from the cross-examination, the very confusing cross-examination of the medical examiner. But the bottom line is the medical examiner said, I never changed my position. The cause of death was always blunt force trauma and burning, and that never changed. He said he didn't say anything different to the defense counsels in 2009. That's what his report said in 2007, and that's what he testified to. There was not any new information. There was no knowledge that was gained by the state in order to bring these charges, and it is disingenuous to make such an argument based on this record. There's no reference in the record to a conversation between the state and this medical examiner? No. I know there is with the defense examiner. Right, no. The state is taking the citations in their brief, is taking directly from defense counsel's question to the medical examiner. Didn't we have a conversation in August or September of 2007? And he said, I think so, I sort of remember it. And didn't you tell us the cause of death was blunt force trauma? And he said, yes, blunt force trauma and burning. He never conceded that he changed his opinion. In fact, he specifically said, I've never changed my opinion on the cause of death in this case. Yeah, I understand that part. I just want to make sure I understand. There's nothing else in the record? There's no record evidence of a conversation. Of a conversation. No, and it makes sense that defense counsels were speaking to the medical examiner. The state just said this. It made sense that defense counsels were speaking to the medical examiner because the new charges had just been brought. So now they're investigating further. All of a sudden they're dealing with murder charges. And as to the state's argument that it would be absurd for Rudy McGee to be charged with murder in Indiana and Illinois at the same time. So what? They can be charged with murder in both states and they have to deal with that. That's not the state's concern. When is the state undercharging so that a defendant doesn't have to deal with excessive charges? That's not an unlikely scenario. For these reasons, we ask that you reverse the murder convictions. Thank you. Thank you. Both sides did an excellent job both in the briefing and in arguments today. A very interesting case. This matter will be taken under advisement and a decision will be issued in due course. Thank you very much.